**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| KENNETH J. JOHNSON, | ) | |
| | ) | No. 2:07-cr-00924-DCN-3 |
| Petitioner, | ) | No. 2:12-cv-03337-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

   This matter is before the court on petitioner Kenneth J. Johnson's motion to vacate, set aside, or correct his federal sentence brought under 28 U.S.C. § 2255. Respondent filed a motion for summary judgment. For the reasons set forth below, the court denies the relief requested under § 2255 and grants respondent's motion for summary judgment. Because the court grants respondent's motion, the court denies petitioner's motion to expand the record as moot.

## I.  BACKGROUND

   On November 14, 2007, Johnson was named as one of twelve co-defendants in a fourteen-count superseding indictment. Johnson was charged with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base (commonly known as "crack" cocaine), in violation of 21 U.S.C. § 846 (Count One); and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Three).

   On March 18, 2008, the government filed a notice of enhanced penalties pursuant 21 U.S.C. § 851 to inform Johnson that he was subject to increased penalties because of

two prior drug-related convictions.  The enhancements left Johnson subject to a mandatory minimum sentence of life imprisonment for Count One.

Johnson's trial began on June 30, 2008.  On July 2, 2008, a jury found Johnson guilty on both counts.  On March 13, 2009, the court sentenced Johnson to life imprisonment as to Count One and a term of 360 months as to Count Three.  The sentences run concurrently.  Johnson directly appealed to the United States Court of Appeals for the Fourth Circuit, which, on January 31, 2011, affirmed Johnson's conviction and sentence.  United States v. Johnson, 415 Fed. App'x 495 (4th Cir. 2011). The mandate was issued on October 11, 2011.

On November 20, 2012, Johnson filed the instant petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255.  On April 25, 2013, the government filed a motion for summary judgment.  On July 1, 2013, Johnson filed a response in opposition to the government's motion, making this case ripe for judicial review.

## II.  STANDARDS

### A.    Pro Se Petitions

Petitioner is proceeding pro se in this case.  Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980).  Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. Id.  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

**B.     § 2255 Motion to Vacate, Set Aside, or Correct a Sentence**

Johnson proceeds under 28 U.S.C. § 2255, which provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  On a motion to vacate, set aside, or correct a federal sentence, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  In deciding a § 2255 motion, the court shall grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The court has reviewed the record in this case and has determined that a hearing is not necessary.

**C.     Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is,

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

A district court's resolution of a prisoner's § 2255 appeal proceeds in two steps: (1) "the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds" listed in § 2255(a); and (2) "if the prisoner's sentence is found unlawful on one of these grounds, the district court should grant the prisoner an 'appropriate' remedy, which includes discharge, resentencing, or a new trial." United States v. Pettiford, 612 F.3d 270, 277 (4th Cir. 2010). "If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under the threshold inquiry, however, 'the court must deny the petition.'" Id. (quoting United States v. Hadden, 475 F.3d 652, 661 (4th Cir. 2007)).

Johnson raises two grounds for relief: (1) ineffective assistance of both trial and appellate counsel, and (2) failure of the government to turn over exculpatory evidence. The court addresses these claims in turn.

### A. Ground One: Ineffective Assistance of Counsel

Johnson's claims that he received ineffective assistance of counsel at both the trial and appeal phases of his criminal proceedings. The Sixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel for his

defense.  The "right to counsel is the right to effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 (1970).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that he was prejudiced by the deficiency.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "[A] failure of proof on either prong ends the matter."  United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

Under the first prong, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Courts "apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  Roane, 378 F.3d at 404 (quoting Strickland, 466 U.S. at 687).  Counsel's performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of reasonableness is highly deferential."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

The second prong, or the "prejudice prong," requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  Id.  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," and a defendant must demonstrate that "the decision reached would reasonably likely have been different absent the errors."  Id. at 695.

The standard of effective assistance of appellate counsel is the same as for trial counsel.  See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").  On review, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

The court considers each of Johnson's eight ineffective assistance claims in turn.

### 1.       Failure to Interview Co-Defendants

Johnson first claims that his trial counsel provided ineffective assistance by failing to investigate and interview his co-defendants who had pled guilty and testified at other trials.  Petr.'s Br. 13.   Johnson asserts that if counsel would have interviewed Johnson's co-defendants, she would have learned that they did not have knowledge of his involvement with drugs, supporting a defense that he "was no more than a seller of cocaine and not involved in the . . . conspiracy."  Petr.'s Br. 14.  Johnson argues that the evidence at trial showed that he sold cocaine to several unrelated individuals during the time of the conspiracy, but that

> [o]nce Petitioner sold cocaine to these individuals, he did nothing else to assist them; he had no control over anyone; no one had control over him; not one member of the alleged conspiracy was required to buy drugs from Petitioner and he was not required to sell any member of the conspiracy any drugs; and lastly, there was never an agreement to commit a crime.

Id.

As noted by the government, Johnson misunderstands the nature of a conspiracy under 21 U.S.C. § 846.  "Once a conspiracy has been proven, the evidence need only establish a slight connection between a defendant and the conspiracy to support a conviction."  United States v. Strickland, 245 F.3d 368, 385 (4th Cir. 2001) (citation omitted).  Indeed, "a defendant need not have knowledge of all his co-conspirators, or all of the details of the conspiracy, and he may be convicted despite having played only a minor role."  Id.

Because one may be a member of a conspiracy without knowing all of the co-conspirators, the testimony of some co-conspirators that they had no knowledge of Johnson's drug activities would not have prevented his conviction on the conspiracy count.

Additionally, extensive evidence presented at trial showed that Johnson had more than a "slight connection" to the conspiracy and played more than a "minor role."  Evidence showed that Johnson sold and fronted[1] large quantities of cocaine to other dealers, including Henry Bennett, who purchased kilograms of cocaine from Johnson when Bennett's other major source of cocaine was unable to supply it.  Trial Tr. vol. 1, 218, June 30, 2008.  Anthony Gordon testified that he not only purchased large quantities of cocaine from Johnson for Bennett, but that he also purchased small quantities of cocaine from Johnson for others.  Trial Tr. vol. 1, 219.  Benjamin Jenkins testified that he and his partner received three or four kilograms from Johnson at Bennett's house, after Bennett was unable to provide cocaine for which they had paid over $200,000.   Trial Tr.

---

[1] "Fronting" drugs refers to selling drugs on credit with belief that the buyer will pay for the product later at an increased price from cash buyers.  Petr.'s Br. 21.

vol. 2, 292-99, July 1, 2008.  DEA Agent Brendan McSheehy testified that the cell phone seized from Johnson the night of his arrest had been active for only five days, and that the numbers it had been in contact included those for Gordon and Bennett.  Trial Tr. vol. 2, 339-41.  Agent McSheehy also testified that a duffle bag containing $112,000 and an address book, which included Johnson's telephone number, were seized from Bennett.  Trial Tr. vol. 2, 342.

Johnson has not shown that there is a reasonable probability that the result of his trial would have been different had his counsel interviewed and investigated his co-defendants.  The fact that some co-defendants did not know of his involvement with drugs would not have precluded Johnson's conspiracy conviction because one may be a member of a drug conspiracy without knowing all of the co-conspirators.  Johnson was not prejudiced because there was extensive evidence presented at trial which clearly established Johnson's connection to the conspiracy.

For these reasons, Johnson's first ineffective assistance claim fails.

### 2.      Failure to Review Discovery Materials with Petitioner

Next, Johnson alleges that his trial counsel was ineffective by failing to review discovery material with him and not allowing him to "examine or maintain in his possession any discovery material."  Petr.'s Br. 15.  Johnson claims that this failure kept him from participating in his defense and from making an informed decision whether or not to plead guilty.  Id.

Johnson's trial counsel concedes that she did not provide his client with a copy of discovery to keep while he was in prison.  Moody Aff. ¶ 4.  However, counsel simply acted pursuant to this court's protective order, which prohibited counsel from making

copies for or leaving any discovery materials with Johnson while he was incarcerated. Protective Order 2-3, Jan. 24, 2008, ECF No. 358. Johnson's counsel "review[ed] the discovery with Mr. Johnson face to face," taking three notebooks constituting 2000 pages of discovery on each visit to the detention center. Moody Aff. ¶ 4.

While a defendant generally has a right to review the discovery materials that will be used against him at trial, United States v. Hung, 667 F.2d 1105, 1108 (4th Cir. 1981), it is not improper to restrain "counsel from leaving discovery materials with the Petitioner in jail to safeguard the material contained therein." Ratliff v. United States, No. 11–cv–70034, 2013 WL 1567405, at *6 (D.S.C. Apr. 15, 2013). There is no serious dispute that Johnson's counsel reviewed the discovery material with him, nor is there any dispute that counsel's failure to provide Johnson with copies of his discovery was in keeping with the court's protective order. Counsel's compliance with this court's order cannot constitute ineffective assistance.

Additionally, Johnson has not pointed to any specific discovery material, how he would have utilized it, or, if he were allowed to have a copy, how it would have made a difference in the outcome of his trial. See United States v. Tinsley, 2012 WL 2131898 (E.D. Va. June 11, 2012) (holding that petitioner did not make an adequate claim of ineffective assistance because he failed to explain how he was prejudiced by his counsel's alleged failure to share discovery material). A petitioner bears the burden of proving the grounds for a collateral attack of his conviction by a preponderance of the evidence. Mills v. United States, Nos. 2:97-cr-00815-DCN-1, 2:11-cv-02522-DCN, 2013 WL 566855, at *2 (D.S.C. Feb. 11, 2013). Johnson has not carried that burden here.

Therefore, Johnson's second ineffective assistance claim fails.

### 3.     Failure to Obtain Testimony of Anthony Gordon

Third, Johnson contends that his trial attorney erred by failing to obtain the testimony of co-conspirator Gordon from co-defendant Bennett's trial.  Petr.'s Br. 16. Johnson argues that Gordon's previous testimony could have been used to impeach Gordon's testimony in Johnson's trial.[2] Id.  Johnson argues this is significant because Gordon was the only witness that tied Johnson to Bennett.  Petr.'s Br. 17.

Counsel has an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so <u>may</u> constitute ineffective assistance of counsel. <u>Tucker v. Ozmint</u>, 350 F.3d 433, 444 (4th Cir. 2003) (emphasis added).  Here, however, even if counsel's failure to obtain Gordon's testimony was an error, in light of the overwhelming evidence against Johnson, Johnson cannot show that such an error prejudiced his case.

Although Gordon's testimony was "beneficial to the government's case, it was not crucial."  <u>Koon v. Rushton</u>, 364 F. App'x 22, 29 (4th Cir. 2010) (unpublished) (holding that the strength of other evidence is relevant to the prejudice prong on a claim of ineffective assistance for failure to impeach a government witness).  Even assuming the jury would have discredited the entirety of Gordon's testimony, the remaining evidence against Johnson was extensive.  John Belton testified that he purchased cocaine

---

[2] Johnson claims that Gordon's previous testimony could have been used to impeach his testimony in Johnson's trial because his previous testimony was inconsistent. In Bennett's trial, Gordon testified that he drove to Atlanta several times to pick up drugs for Bennett and usually took between $80,000 and $120,000 with him, never buying more than four kilograms of cocaine on any trip.  <u>United States v. Bennett</u>, No. 2:07-cr-924-DCN-3, Trial Tr. vol. 1, 298-302, Mar. 10, 2009.  During Johnson's trial, Gordon testified that he drove to Atlanta to buy 12 kilograms of cocaine from Johnson for $210,000.  Trial Tr. vol. 1, 213-216.

both from Johnson and from someone he believed worked for Johnson. Trial Tr. vol. 1, 197. Juan Brown testified to purchasing cocaine from Johnson a number of times, ranging in quantifies from nine ounces to a kilogram. Trial Tr. vol. 1, 243-48. Jenkins testified that he received three or four kilograms of cocaine from Johnson at Bennett's house. Trial Tr. vol. 2, 295-98. Additionally, Agent McSheehy testified that a cell phone seized from Johnson connected him to Gordon, Brown, and Bennett. Contrary to Johnson's assertion that Gordon was the only witness to tie him to Bennett, Johnson was also tied to Bennett by the testimony of both Jenkins and Agent McSheehy.

Johnson argues that if counsel had obtained Gordon's testimony and impeached him, "the result could have been different." Petr.'s Br. 17. However, the mere possibility of an alternate outcome is insufficient to sustain a claim for ineffective assistance of counsel. Hoots v. Allsbrook, 785 F.2d 1214, 1221 (4th Cir. 1986). Johnson must show that there is a "reasonable probability" that the result would have been different. Strickland, 466 U.S. at 694. Given the strength of proof in this case, even excluding Gordon's testimony, any error on this score would not "undermine confidence in the outcome" of the proceeding. Strickland, 466 U.S. at 694.

Johnson's third claim of ineffective assistance fails.

### 4. Failure to Object to Vouching by the Government

Johnson argues that his trial counsel was ineffective by failing to object to vouching by the government. Petr.'s Br. 17. Johnson alleges that the prosecutor impermissibly vouched for several of the government's witnesses during his closing statement. Id.

It is impermissible for a prosecutor to vouch for the testimony of government witnesses in arguments to the jury. United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997). In addressing a claim of improper vouching, a court must first decide whether the comments actually constitute vouching, and, if so, whether the comments prejudiced the defendant. Id. Vouching occurs when "a prosecutor indicates a personal belief in the credibility or honesty of a witness." Id. A prosecutor's reference to facts relevant to the jury's assessment of the witness's credibility does not constitute impermissible vouching. United States v. Jones, 471 F.3d 535, 544 (4th Cir. 2006). To determine whether comments prejudiced the defendant, courts consider "(1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's attention." Sanchez, 118 F.3d at 198 (citation omitted). Improper remarks during closing argument mandate retrial only when the prosecutor's comments "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process. United States v. Collins, 401 F.3d 212, 217 (4th Cir. 2005).

Johnson argues that a variety of remarks made by the prosecutor at closing argument constituted vouching. First, he asserts that the prosecutor vouched for Rias Richardson by noting that he was "not charged with anything" and "doesn't have "anything hanging over his head." Petr.'s Br. 17. This comment does not constitute impermissible vouching. The prosecutor did not indicate his own person belief about Richardson's credibility but rather merely referred to a fact relevant to the jury's assessment of that credibility.

Next, Johnson contends that the prosecutor vouched for Benjamin Jenkins by arguing that Jenkins was more believable because he admitted to self-incriminating actions in his testimony regarding his encounter with Johnson, including taking a gun to a confrontation. Petr.'s Br. 17-18. The prosecutor commented that "I can only describe that as being brutally honest." Trial Tr. vol. 3, 440, July 2, 2008. The prosecutor prefaced his argument with a rhetorical question – "And you know what makes Benjamin Jenkins so credible?" Trial Tr. vol. 3, 439. He concluded his argument about Jenkins's credibility by telling jurors, "And so I just merely point that out to you . . . when you go back there and you decide who was telling us the truth, think about that little bit." Trial Tr. vol. 3, 440. Rather than giving his own belief about Jenkins's credibility, the prosecutor was inviting jurors to scrutinize the testimony and make their own assessments of the witness's credibility.

Johnson argues that the prosecutor again impermissibly vouched for Jenkins's credibility later in his closing argument. Petr.'s Br. 18. The prosecutor stated:

> So what's his motivation? Benjamin Jenkins, you know, another thing that makes Benjamin Jenkins credible, I would submit to you, is Benjamin Jenkins, who was also looking at, he told you, he's charged with conspiracy to possess cocaine, more than five kilos. He's in a similar situation, his own conspiracy. He said he had his own sources. He's got his own problems. Benjamin Jenkins came in here, the guy who certainly needs to get out of his jam, and told you he dealt with Kenneth Johnson one time.
>
> Now, I would submit to you if a man is going to come in here and lie and hope that that lie helps him, why would he say, I only dealt with him just one time? I mean, if you are going to lie, you know, make it good. If you are going to lie, be the star witness, so that the Judge, the prosecutor says, Man, you were good. Boy, when you came in and talked about those 50 kilos you got from him, that was good.

Trial Tr. vol. 3, 450-51. However, as the government notes, the prosecutor twice prefaced his remarks to the jurors with "I submit to you." Trial Tr. vol. 3, 450. The Fourth Circuit has held that comments prefaced by the phrases "I argue to you" and "I contend to you" indicate "routine argument, and not the expression of the prosecutor's personal opinion." United States v. Celestine, 43 F. App'x 586, 596 (4th Cir. 2002) (unpublished). The prosecutor's remarks about Jenkins here are likewise more akin to routine argument than an expression of his beliefs.

Johnson next argues that the government vouched for Belton when it said, "Why did John Belton say he was there to pay for a drug debt with an envelope with cash in it? Because it's true." Petr.'s Br. 18; see Trial Tr. vol. 3, 447. The government argues that the prosecutor's comments must be viewed in context. Resp't's Mot. for Summ. J. 14. The prosecutor stated:

> How did John Belton know, you heard his explanation, that was money in an envelope? His [Johnson's] explanation, that was money in an envelope that was from that day's car wash. How did John Belton know to tell the police that he handed Kenneth Johnson the money he owed him in an envelope? I mean, how did he know that? And how fortuitous that when the police arrested him, he had an envelope in his pocket.
>
> Why did John Belton mention money at all? Why did John Belton say, I was there to pay off a previous drug debt. I buy drugs from him. He fronts me some. I pay for some. And I was there to pay him what I owed. Why did he have to say that at all? I mean, we know he's a drug dealer. He admitted he's a drug dealer. He's dealt in marijuana, cocaine and heroin. He admitted that. It certainly doesn't sully his reputation anymore to say, Oh, on that night I was paying for a drug debt. Why didn't John Belton come in and say, On that night I was learning how to be a little bit better heroin dealer, you know? Tips from the pros. And that's why I asked him to come out at midnight and meet me in the dark part of a parking lot. Why didn't John Belton say that? Why did John Belton say he was there to pay for a drug debt with an envelope with cash in it? Because it's true.

Trial Tr. vol. 3, 446-47. Later in his closing, the prosecutor stated:

> Why would John Belton so casually tell the officer, Man, search whatever you want. Because he told you, I knew all I had on me was money. It ain't against the law to have money. Search whatever car you want, man, you know, why would Belton say all that? Because he's telling you the truth.

Trial Tr. vol. 3, 451. The government argues that the prosecutor was asking the jurors to logically analyze the testimony by comparing Belton's version of the events with Johnson's. Resp't's Mot. 14. Whether these comments constitute vouching is a close call. Unlike the prosecutor's other comments, he did not preface these arguments with "I submit to you," and they were not book-ended by statements that made it clear that the credibility determination was for the jury. Therefore, the court will assume without deciding that the prosecutor's statements regarding the truth of Belton's testimony constituted vouching.

However, after considering the four-factor test laid out in Sanchez, 118 F.3d at 198, the court determines that Johnson was not prejudiced by the prosecutor's argument. First, the statements were unlikely to have misled the jury. The court instructed the jurors prior to their deliberations that the closing arguments by the lawyers did not constitute evidence. Trial Tr. vol. 3, 489. Additionally, the court instructed the jurors that they "must decide which testimony to believe and which testimony not to believe," telling them that they "may believe or disbelieve all or any part of any witness's testimony." Trial Tr. vol. 3, 491. Second, the comments that allegedly constituted vouching were not extensive, but rather consisted of two short and isolated statements – "Because it's true" and "Because he's telling you the truth." Third, and most importantly, the evidence against Johnson was very strong. Johnson was arrested with a quarter kilogram of powder cocaine in his car. Five witnesses testified that they had

purchased large amounts of drugs from Johnson, including Belton who testified that he had purchased kilogram quantities of cocaine from Johnson. A duffle bag containing $112,000 and an address book, which included Johnson's telephone number, were seized from Bennett. The testimony combined with the physical evidence makes the proof of guilt very strong. Finally, there is no indication that the prosecutor's comments were deliberately made in order to divert the jury's attention. In fact, the prosecutor invited the jurors to pay close attention to the testimony that had been presented. Therefore, even if the statements as to the truth of Belton's testimony constituted vouching, they did not prejudice Johnson.

Johnson lastly complains that his counsel failed to object to the government's "wholesale vouching for all its cooperating witnesses." Petr.'s Br. 18. Johnson cites the prosecutor's discussion of the cooperating witnesses' proffer letters and plea agreements and the obligations they create. The prosecutor emphasized that the plea agreements "are real clear about the defendant must testify fully and truthfully at any trials if called upon to do so." Trial Tr. vol. 3, 447-48. The Fourth Circuit has positively cited the Tenth Circuit's delineation between proper and improper references to plea agreements:

> Presenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching . . . . Use of the 'truthfulness' portions of [a plea agreement] becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony.

United States v. Collins, 401 F.3d 212, 216 (4th Cir. 2005) (citing United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990)).

At Johnson's trial, the prosecutor discussed the motivation the cooperating witnesses had to tell the truth, but did not indicate, either explicitly or implicitly, that the government could monitor and accurately verify their truthfulness.  Cf. Collins, 401 F.3d at 215-17 (finding that the prosecutor's statement that the "government is always seeking to determine whether [a cooperator is] telling the truth" either "crossed the line, or, at best, was a close call," but finding that the statement did not prejudice defendant).  Mindful that "the potential for impermissible vouching is greater during an attorney's soliloquy," id. at 217, the court nonetheless finds that the prosecutor's reference to the cooperating witnesses' plea agreements at Johnson's trial did not constitute vouching.

In sum, the prosecutor's statements in his closing argument did not constitute impermissible vouching that prejudiced Johnson.  Therefore, Johnson's fourth ineffective assistance claim fails.

### 5. Failure to Appeal the Insufficiency of the Evidence "Due to the Buyer/Seller Relationship of the Defendants"

Next, Johnson alleges that his appellate counsel erred by failing to appeal the insufficiency of the evidence with regard to his conspiracy conviction due to the buyer/seller relationship between the defendants.  Petr.'s Br. 19.  Johnson asserts that there is no evidence establishing that he and his buyers "agreed to commit any crime other than the crime . . . of the sale itself."  Id.

Evidence of a buy-sell transaction is probative as to whether a conspiratorial relationship exists.  United States v. Yearwood, 518 F.3d 220, 226 (4th Cir. 2008) (citation omitted).  Evidence of a buy-sell relationship, combined with evidence of a substantial quantity of drugs supports "a reasonable inference that the parties were

coconspirators." Id.  If a drug seller and a drug purchaser have an agreement that the buyer will resell the cocaine in the marketplace, they have conspired to the redistribution of the cocaine, and can be found guilty of not only a distribution offense but also of a conspiracy offense.  United States v. Edmonds, 679 F.3d 169, 174 (4th Cir. 2012), vacated on other grounds, 133 S. Ct. 376 (2012).  The regularity of individual distribution transactions may also indicate the existence of a conspiracy.  Id. (citing United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008).  "[A] transaction involving a consignment arrangement or the 'fronting' of drugs indicates conspiracy to engage in drug trafficking beyond the immediate distribution transaction, as the consignment implies a credit agreement that looks to further transactions to secure income to complete the original transaction.  Id. (citing United States v. Hicks, 368 F.3d 801, 805 (7th Cir. 2004).

As noted above, the jury heard extensive evidence that implicated Johnson in numerous transactions of buying and selling large amounts of cocaine, fronting these purchases, and a cooperative arrangement with Bennett to satisfy the demands of Bennett's customers.  See Trial Tr. vol. 1, 154-62, 243-48, 218-24.

The evidence clearly indicates that Johnson's involvement in fronting several kilograms of cocaine falls well outside of a "mere buyer/seller" relationship and indicates that Johnson was conspiring to engage in drug trafficking.  Therefore, the failure to appeal the insufficiency of the evidence based on the buyer/seller relationship between the defendants did not constitute ineffective assistance.

Johnson's fifth ineffective assistance claim fails.

6. **Failure to Appeal Insufficiency of the Evidence "Due to a Single Conspiracy Being Charged and Multiple Conspiracies Being Proven at Trial"**

Sixth, Johnson alleges that his appellate attorney erred by failing to appeal the insufficiency of the evidence supporting his conspiracy conviction "due to a single conspiracy being charged and multiple conspiracies being proven at trial." Petr.'s Br. 21. Johnson claims that the evidence at trial established "at least two conspiracies" – a conspiracy between Johnson, Gordon, Belton, and Richardson, and a separate and independent conspiracy between several unindicted persons and all of Johnson's co-defendants except for Johnson and Belton. Petr.'s Br. 22. Because of this, Johnson argues that the evidence at his trial varied impermissibly from the allegations of the indictment.

"A variance constitutes a legitimate grounds for reversal only if the appellant shows that the variance infringed his 'substantial rights' and thereby resulted in actual prejudice." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). Whether there is a single conspiracy or multiple conspiracies depends on the overlap of key actors, methods, and goals. United States v. Strickland, 245 F.3d 368, 385 (4th Cir. 2001). To show actual prejudice stemming from a multiple conspiracy variance, a defendant must prove that there were so many defendants and so many separate conspiracies before the jury that it is likely the jurors transferred evidence from one conspiracy to ta defendant involved in an unrelated conspiracy. United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). "Whether there is a single conspiracy or multiple conspiracies . . . is a question of fact for the jury," United States v. Harris, 39 F.3d 1262, 1267 (4th Cir. 1994), and "[i]f the jury is properly instructed, the finding of a single conspiracy must stand

19

unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986).

After reviewing the record, the court is satisfied that the evidence at trial, viewed in the light most favorable to the government, fully supports the jury's verdict on the conspiracy count.[3] As discussed above, the evidence implicated Johnson in numerous transactions of buying and selling large amounts of cocaine, fronting these purchases, and a cooperative arrangement with Bennett to satisfy the demands of Bennett's customers. A reasonable jury could find that this evidence establishes a single conspiracy.

Additionally, this case involved twelve defendants and, according to Johnson, two different conspiracies. Courts have held that cases involving similar numbers of defendants and conspiracies are "not so complex by definition that the jury will be unable to segregate the evidence properly." Kennedy, 32 F.3d at 883 (eight defendants and three possible conspiracies); see United States v. Caporale, 806 F.2d 1487 (11th Cir. 1986) (eleven defendants and two possible conspiracies); United States v. Jones, 880 F.2d 55 (8th Cir. 1989) (five defendants and two possible conspiracies); cf. Kotteakos v. United States, 328 U.S. 750 (1946) (variance held prejudicial when indictment charged one conspiracy but evidence showed eight conspiracies involving nineteen defendants). Moreover, because he "stood trial alone," Johnson "cannot establish actual prejudice from any variance between the indictment and the evidence." United States v. Pate, 326 F. App'x 684, 686 (4th Cir. 2009) (citing Kennedy, 32 F.3d at 884).

---

[3] The court also notes that the jury was given instructions concerning single and multiple conspiracies. Trial Tr. vol. 3, 506.

Thus, Johnson's sixth claim of ineffective assistance fails.

### 7. Failure to Appeal the "Insufficiency of the Evidence to Sustain a Conviction for Count One"

Johnson alleges that his appellate counsel erred by not appealing the sufficiency of the evidence to support conviction on Count One, the conspiracy charge. Petr.'s Br. 23. Johnson argues that the evidence was insufficient to sustain a conviction because the evidence showed no more than a buyer/seller relationships and more than one conspiracy was proven. Id.

The court fails to see how this argument differs from Johnson's previous two arguments, which the court addressed in parts III.A.6 and 7. As discussed above, there was sufficient evidence at trial to support a conviction on the conspiracy charge. Therefore, Johnson's seventh ineffective assistance claim fails.

### 8 Failure to Appeal Government Vouching

Lastly, Johnson alleges that his appellate counsel erred by failing to appeal inappropriate vouching by the government. Petr.'s Br. 23.

As discussed above, the government's comments at closing argument did not constitute inappropriate vouching. Therefore appellate counsel was not ineffective for failing to make such a claim. Johnson's last ineffective assistance claim fails.

### B. Ground Two: Exculpatory Evidence

Johnson second claim for habeas relief asserts that the prosecutor withheld exculpatory material evidence from him. Petr.'s Br. 24. Johnson argues that the government failed to make available to him: (1) the testimony of Gordon at Bennett's

trial, and (2) the government's unwritten agreement not to prosecute Richardson for his testimony against Johnson.

Under the holding of Brady v. Maryland, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To prevail on a Brady claim, the defendant must demonstrate that (1) the evidence is favorable to him, either because it is exculpatory or impeaching; (2) the government suppressed the evidence; and (3) the evidence was material to the defense. United States v. Higgs, 663 F.3d 726, 735 (4th Cir. 2011) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Giglio v. United States, 405 U.S. 150, 154-55 (1972)). "The duty to disclose favorable evidence, however, does not require the government to make available all evidence in its possession or within its reach. Nor does the mere suppression of favorable evidence entitle the defendant to relief. Higgs, 663 F.3d at 735. There is no Brady violation if the evidence is available to the defense from other sources or the defense already possesses the evidence. Id. And, while "the term 'Brady violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory [or impeachment] evidence . . . , strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Id. (citation omitted). A "reasonable probability" of a different result is shown "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Id. (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

The alleged non-disclosure of Gordon's previous testimony in Bennett's trial is not a Brady violation. Johnson and Bennett were co-defendants, and Johnson received notice of Bennett's trial. He could have obtained the transcript of Gordon's testimony without any assistance from the prosecution. Therefore, the government had no duty to disclose the transcript. See United States v. Jeffers, 570 F.3d 557, 573 (4th Cir. 2009) ("[W]here exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine.").

Considering his other alleged Brady violation, Johnson has no basis, other than sheer speculation, for his claim that the government had an agreement with Richardson not to prosecute him if he testified at Johnson's trial. In a situation where an "accused cannot possibly know, but may only suspect, that particular information exists which meets [the Brady] requirements, he is not required, in order to invoke the right, to make a particular showing of the exact information sought and how it is material and favorable." Love v. Johnson, 57 F.3d 1305, 1313 (4th Cir. 1995). However, a petitioner needs to "at least make some plausible showing" that exculpatory evidence exists. Pennsylvania v. Ritchie, 480 U.S. 39, 58 n.15 (1987). Johnson has not made a plausible showing here. See U.S. v. Roane, 378 F.3d 382, 400-401 (2004) (finding that "airy generalities [and] conclusory assertions" are not sufficient to meet the defendant's burden in a § 2255 claim).

Therefore, Johnson's second ground for relief, that the government withheld exculpatory and material evidence fails.

## IV.   CONCLUSION

Based on the foregoing, the court **DENIES** petitioner's habeas petition brought under 28 U.S.C. § 2255 and **GRANTS** respondent's motion for summary judgment.  As a result, the court **DENIES** petitioner's motion to expand the record, ECF No. 915, as moot.

Additionally, the court **DENIES** a certificate of appealability because petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003); <u>Rose v. Lee</u>, 252 F.3d 676, 683 (4th Cir. 2001).

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 27, 2014**
**Charleston, South Carolina**